# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**ANTHONY HENDERSON,**

      **Plaintiff,**

v.                                        Case 2:15-cv-02113-cgc

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social**
**Security,**

      **Defendant.**

## ORDER AFFIRMING DECISION OF COMMISSIONER

Plaintiff filed this action to obtain judicial review of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434, 1381-1385. By consent of the parties, this case has been referred to the United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Plaintiff filed his application for DIB and SSI on April 29, 2009. His claims were denied initially on March 12, 2010 and upon reconsideration on October 19, 2010. A hearing was held on September 27, 2011 before an Administrative Law Judge ("ALJ"). On April 19, 2012, the ALJ found that Plaintiff was not disabled under the Act. The Appeals Council then denied Plaintiff's request for review. This decision became the Commissioner's final decision. Plaintiff then filed this

1

action requesting reversal of the Commissioner's decision. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); *Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 683 (6th Cir.1992); *Cohen v. Secretary of Health & Human Services.*, 964 F.2d 524, 528 (6th Cir.1992), and whether the correct legal standards were applied, *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on April 23, 1963 and was forty-four years old on the alleged disability onset date. (R. at 32). He has at least a high school education and is able to communicate in English. (*Id.*) His only past relevant work experience is that of a "laborer, medium and unskilled work" and a "garbage collector very heavy and unskilled work." (R. at 31-32). He alleges a disability onset date of June 11, 2007. (R. at 24).

The ALJ determined as follows: (1) Plaintiff meets the insured status requirements of the Act through December 31, 2012; (2) Plaintiff has not engaged in substantial gainful activity since June 11, 2007, the alleged onset date; (3) Plaintiff has severe impairments of a "back disorder"—specifically, degenerative disc disease of the lumbar spine— and obesity; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a) except secondary to pain and that he is limited to carrying out simple instructions at the unskilled level; (6) Plaintiff is unable to perform any past relevant work; (7) transferability of job skills is not an issue because Plaintiff's past relevant work is unskilled; (8) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in the national economy that Plaintiff can perform; and, (9) Plaintiff has not been under a disability as defined in the Act from June 11, 2007 through the date of the ALJ's decision. (R. at 26-32).

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Secretary of Health & Human Services.*, 923 F.2d 1168, 1174 (6th Cir.1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.[1]

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301 (6th Cir. 1988). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520 & 416.920.

Here, the sequential analysis proceeded to the fifth step. At step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's RFC . . . and vocational profile." *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). Ultimately, the ALJ found that Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy, and, therefore, was not disabled within the meaning of the Act.

---

[1] Before then proceeding to step four of the sequential evaluation process, the ALJ must determine the claimant's RFC pursuant to 20 C.F.R. 404.1520(e) and 416.920(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe pursuant to 20 C.F.R 404.1520(e), 404.1545, 416.920(e) & 416.945.

On appeal to this Court, Plaintiff asserts that the ALJ made multiple errors of both fact and law in determining Plaintiff's RFC. Specifically, Plaintiff raises the following issues: (1) whether the ALJ properly considered the opinions of Plaintiff's treating physicians on the issue of whether he could perform a full day of sedentary work; (2) whether the ALJ made various erroneous findings of fact in consideration of the medical source opinion evidence; (3) whether the ALJ properly considered Plaintiff's credibility as to his reports of pain; and (4) whether the ALJ properly considered the combined effects of Plaintiff's impairments when he considered Plaintiff's various diagnoses and the opinions of his treating physicians separately.

## I. Medical Source Opinions

As to the first issue, Plaintiff argues that the ALJ erred in weighing the medical source opinion evidence in the record in crafting Plaintiff's RFC. The ALJ's assessment of medical source opinions must follow 20 C.F.R. § 404.1527(c) and § 416.927(c), which contain six factors. First, the ALJ must examine the relationship between the patient and medical professional, as more weight is accorded to an examining source. 20 C.F.R. §§ 404.1527(c)(1) & 416.927(c)(1). Second, the ALJ must consider whether the medical professional actually treated the patient, as "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [his] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). If a treating source's opinion on the nature and severity of the impairment(s) is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record, [the ALJ] will give it

controlling weight." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). If a treating source's opinion is not given controlling weight, the ALJ must consider the length of the treatment relationship and the frequency of examination along with the nature and extent of the treatment relationship to determine if his or her opinion should be given more weight than a nontreating source. 20 C.F.R. §§ 404.1527(c)(2), (c)(2)(I)-(ii), 416.927(c)(2) & 416.927(c)(2)(I)-(ii). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2) & 416.927(c)(2).

Third, the ALJ must consider the amount of relevant evidence the medical source provides to support the opinion, particularly medical signs and laboratory findings, to determine the amount of weight to be given to the opinion. 20 C.F.R. §§ 404.1527(c)(3) & 416.927(c)(3). As to nontreating sources, the weight accorded to their opinions will "depend on the degree to which they provide supporting explanations for their opinions." *Id*. The ALJ must also "evaluate the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." *Id*.

Fourth, the ALJ must consider the consistency of the opinion, as the more consistent an opinion is with the record as a whole, the more weight it will be given. 20 C.F.R. §§ 404.1527(c)(4) & 416.927(c)(4). Fifth, the ALJ generally gives more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to an opinion of a source who is not a specialist. 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5). Sixth, the ALJ will consider any factors the claimant or others bring to his or her attention, or of which he or she is aware, which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(6) & 416.927(c)(6).

The ALJ considered the opinions of multiple medical sources in the specialties of orthopedics

and anesthesia, who all both examined and treated Plaintiff: Dr. Fereidoon Parsioon, Dr. David Dowling, Dr. Owen Tabor, Dr. Philip Green, and Dr. T. E. Rizk. (R. at 27-31). Overall, the ALJ concluded that the "objective medical evidence is fully consistent with the above residual functional capacity and inconsistent with disabling levels of pain" as complained of by Plaintiff, which the ALJ found to be exaggerated. (R. at 27-31). While the ALJ did not explicitly state that he accorded the majority of the treating physicians' opinions with controlling weight, it appears to this Court that he did so with the exception of Dr. Rizk, the weight of whose opinion he expressly reduced. (R. at 30-31). In so doing, he considered that Dr. Rizk was only "marginally a treating source with only 2 treatment visits" on November 19, 2010 and June 20, 2011. (R. at 31). Further, he concluded that the "nature and frequency of Dr. Rizk's treatment and evaluation can reasonably be seen as not based on the claimant's medical need for treatment or evaluation, but on the need for the claimant to obtain a report in support of his claim for disability." (*Id.*)

Upon review, the ALJ's consideration of the medical source opinions properly followed 20 C.F.R. § 404.1527(c) and § 416.927(c). Accordingly, the Court concludes that he did not err in the weight he accorded to these opinions and that his decision was supported by substantial evidence.

## II. Accuracy of Findings of Fact

Next, Plaintiff asserts that the ALJ made several inaccurate findings of fact in his decision: (1) that Plaintiff demonstrated negative straight leg raising tests when he actually exhibited positive straight leg raising tests upon examination by both Dr. Green and Dr. Rizk; (2) that Dr. Green did not prescribe a spinal cord stimulator trial when Dr. Green only sought to attempt medical management first and ultimately recommended the spinal cord stimulator; (3) that Dr. Green only prescribed Percocet one time when he was also prescribed and continues to take Oxycodone and

7

Hydrocodone; and, (4) that Plaintiff could have had his medication adjusted to prevent the side effects of drowsiness. Plaintiff further states that the ALJ failed to address evidence that Plaintiff's pain was not resolved despite his use of increasingly serious medications. The Court will consider each of these in turn.

As to Plaintiff's straight leg raising test results, the ALJ correctly noted that Plaintiff had a "positive left straight leg raise" when examined by Dr. Green (R. at 29, 519, 522). With respect to Dr. Rizk, the record states that his "straight leg rest test was 60° on the left side and 70° on the right side," (R. at 524), which the ALJ did not mention. However, as already stated, the ALJ did accord lessened weight to Dr. Rizk's medical source opinion due to his limited treatment history with Plaintiff. (R. at 30-31). Further, the ALJ did correctly note that Plaintiff had a negative straight leg raise on various occasions when examined by Dr. Tabor (R. at 28, 379, 470), Dr. Dowling (R. at 28, 409), and Dr. Katz (R. at 28, 459, 517). This is consistent with the ALJ's conclusion that examination results have shown a negative straight leg raise on multiple occasions. (R. at 30). While the ALJ describes the record as having "consistently" shown a negative straight leg raise, and while there were positive straight leg tests on certain examinations, the Court does not find that the ALJ erred in his overall recitation and consideration of the medical source opinion evidence on this finding.

As to the spinal cord stimulator, Dr. Green examined Plaintiff on March 8, 2011. (R. at 520, 542). Plaintiff had questions about a spinal cord stimulator, which Dr. Green reports were addressed. (*Id.*) Dr. Green stated that he still felt that Plaintiff "could have further attempts at medical management pain control." (*Id.*) On July 14, 2011, Plaintiff returned to Dr. Green "stating that he would like a stimulator trial." (R. at 522 & 538). Dr. Green discussed "differential diagnosis and

8

treatment options" with Plaintiff, and Plaintiff stated that he was fearful that he would not be approved by insurance. (*Id.*) Ultimately, Dr. Green scheduled Plaintiff for a "TENS trial," noted that he is "considering a spinal cord stimulator and would like to proceed with that" and "is willing to submit for a psychological evaluation prior to the trial." (*Id.*) Dr. Green stated that Plaintiff would follow him "at the trial if approved, or otherwise as needed" and "will follow with others as scheduled." (*Id.*) Ultimately, workers' compensation insurance denied the spinal stimulator. (R. at 523). Upon review, while Plaintiff would assert that Dr. Green "ultimately recommended and continued to recommend that Plaintiff be given the opportunity to undergo this procedure," that is not reflected in the record. Instead, it appears that Plaintiff initiated both discussions of this procedure and, on the latter date, Dr. Green scheduled Plaintiff for a TENS trial and only noted that Plaintiff wanted to pursue a spinal cord stimulator and would follow certain procedures if approved. Thus, the Court concludes that the ALJ's summarization that "Dr. Green did not prescribe a stimulator" is correct and supported by substantial evidence in the record.

As to Plaintiff's pain medications, the ALJ summarized that Dr. Green issued him a "one-time prescription for Percocet 5 mg #30" and referred him "for evaluation of ongoing medical management of pain control." (R. at 29). While this one reference is only to Dr. Green's prescription of pain medicine to Plaintiff, the ALJ references Plaintiff's reliance on medication, including Ultram ER 100mg, Ultram ER 200mg, Aleve, multiple times in his consideration of his RFC. (R. at 29, 30). While Plaintiff asserts that the ALJ did not appropriately consider that Plaintiff was also prescribed Oxycodone and Hydrocodone, Plaintiff provides no citation to the records evidencing these additional prescriptions. However, it is clear that the ALJ considered Plaintiff's use of pain medication, including the side effects of drowsiness that it might cause, in determining

9

the RFC. Further, the Sixth Circuit has concluded that the ALJ is "not required to discuss all the evidence, as long as [his] factual findings as a whole show that [he] implicitly considered the record as a whole." *Rudd v. Comm'r of Social Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing *Kornecky v. Comm'r of Social Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)). Accordingly, the Court finds that the ALJ did not err in his consideration of Plaintiff's reliance upon pain medication in determining his RFC.

Finally, Plaintiff asserts that the ALJ erred by stating as follows: "[T]he claimant has alleged significant adverse side-effects (sleepiness from medications), but the record fails to show that he has reported such side effects to treating physicians. This casts doubt on its existence and, moreover, even if it does exist, fails to show that it would be functionally limiting if reported and medications were adjusted." (R. at 30). Upon review, Plaintiff correctly notes that the record does reflect that he advised Dr. Green on March 8, 2011 that Ultram ER "might be a little too strong as he slept a little bit too much when taking it." (R. at 519). It appears that he had been on the 200 mg dosage of Ultram ER from his January 27, 2011 appointment with Dr. Green. (R. at 544). On the March 8, 2011 visit, Dr. Green lowered his dosage to 100mg of Ultram ER and also advised that Plaintiff could take Aleve along with Ultram ER. (R. at 519). Thus, while the ALJ was incorrect that Plaintiff never reported any side effects of drowsiness to a treating physician, it appears to be a moot point as Plaintiff's medication was adjusted and there are no further complaints of drowsiness with that level of medication or others that Plaintiff relies upon in the record. Accordingly, the Court finds that the ALJ did not err in his consideration of the adverse side-effects of Plaintiff's medication.

## III. Plaintiff's Credibility

Next, Plaintiff claims the ALJ did not properly consider his own complaints of his pain and limitations. The ALJ is required to follow 20 C.F.R. § 404.1529 and § 416.929 to evaluate a claimant's symptoms, including pain. He must consider all of a claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a) & § 416.929(a). A claimant's own statements about his level of pain will not alone establish disability; instead, there must be medical signs and laboratory findings which show that the claimant has a medical impairment or combination of impairments which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the other evidence, would lead to a conclusion that the claimant is disabled. *Id*. However, the finding that a claimant's impairments could reasonably be expected to produce his pain does not involve a determination as to the intensity, persistence, or functional limiting effects of his symptoms. 20 C.F.R. § 404.1529(b) & § 416.929(b).

In evaluating the intensity and persistence of a claimant's symptoms, including pain, the ALJ must consider all of the available evidence, including his medical history, the medical signs and laboratory findings, and the claimant's own statements about how the symptoms affect him. 20 C.F.R. § 404.1529(a), (c) & § 416.929(a), (c). The ALJ will then determine the extent to which the alleged functional limitations and restrictions due to pain or other symptoms can reasonably accepted as consistent with the medical signs and laboratory findings and other evidence to decide how a claimant's symptoms affect his ability to work. *Id*. The ALJ further considers the following: the claimant's daily activities; the location, duration, frequency, and intensity of his pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of

any medication he takes or has taken to alleviate his pain or other symptoms; any measures he uses or has used to relieve his pain or other symptoms; and, other factors concerning his functional limitations and restrictions due to pain or other symptoms. *Id*. § 404.1529(c) & § 416.929(c).

In the instant case, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 27). However, the ALJ continued to conclude that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the eventual RFC determination. (*Id*.) Specifically, the ALJ found the Plaintiff to be "credible to the extent he would experience back and leg pain with heavy lifting," and the RFC was "reduced to accommodate such limitation." (*Id*.) The ALJ found, though, that Plaintiff's "allegations that he is incapable of all work activity" was not credible because of "significant inconsistencies in the record as a whole." (*Id*.)

As already discussed in some detail, the ALJ then considered Plaintiff's medical history, the medical signs and laboratory findings, and the claimant's own statements about how the symptoms affect him as required by the applicable regulations. *See* 20 C.F.R. § 404.1529(a), (c) & § 416.929(a), (c). With respect to Plaintiff's credibility, the ALJ found as follows:

> In regard to activities of daily living, the claimant stated in testimony at the hearing that he cannot lift objects and is limited to standing and sitting for short periods of time. He added that he has to take naps during the day. Such testimony indicates a marked curtailment of even simple daily activities, but the evidence as a whole does not substantiate any good cause for such inactivity, apart from the claimant's own preference. For example, the claimant's own treating physicians have assessed the claimant as having the ability to return to work, after a short post surgery recovery period. Severe pain will often result in certain observable manifestations such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, prolonged bed rest or adverse neurological signs. In the present case, no such signs exist in the objective medical evidence of record. The undersigned must conclude, based upon a consideration of subjective allegations weighed against objective medical evidence and other relevant information bearing on the issue of

credibility, that the claimant exaggerates his physical complications and so such subjective allegations must be rejected as lacking credibility.

(R. at 30).

The ALJ considered Plaintiff's work history and concluded that he had "a steady work history for many years prior to the alleged onset date, indicating motivation to work," which the ALJ found to Plaintiff's credit. (*Id*.) The ALJ also considered the credibility of Plaintiff's reports of any limitations of drowsiness due to sleep medication but, as already considered, the ALJ properly determined that Plaintiff's medication dosage had been lowered since the last date upon which he complained of side effects and that there was no more recent support in the record for limitations on this basis. (*Id*.) The ALJ then continued to consider additional evidence as to Plaintiff's credibility as follows:

> His pain and allegations of being disabled are not supported. Two treating physicians, Dr. Tabor and Dr. Green, chose not to assign any restrictions. Examination reports have consistently shown normal gait, normal strength, good range of motion, and negative straight leg raise.[2] Based on the medical evidence of record, the symptoms are partially credible, and disabling symptomology is not supported. The functional restrictions alleged are disproportionate to the clinical findings. Pain, weakness, fatigue, and obesity have been considered singly, and in combination, and are reflected in the sedentary/unskilled residual functional capacity as outlined above.

(*Id*.)

Based upon the ALJ's extensive discussion of Plaintiff's credibility on the intensity, persistence, or functional limiting effects of his symptoms as compared with his including his medical history and the objective medical signs and laboratory findings, the Court concludes that the ALJ complied with 20 C.F.R. § 404.1529 and § 416.929 and that his decision was supported by

---

[2] The ALJ's finding of "consistent[]" negative straight leg raise tests has already been addressed above.

substantial evidence.

Finally, Plaintiff states that the ALJ failed to address the evidence that Plaintiff's pain was not resolved despite use of increasingly serious medications. Plaintiff did not cite to any evidence in the record to support this conclusion, and the ALJ properly considered all of the evidence. Accordingly, the Court concludes that his decision was supported by substantial evidence.

## IV. Plaintiff's Cumulative Impairments

Finally, Plaintiff contends that the ALJ failed to consider the combined effects of Plaintiff's impairments but, instead, only considered Plaintiff's various diagnoses and the opinions of his treating physicians separately. The record reflects that the ALJ noted that Plaintiff's symptoms of "[p]ain, weakness, fatigue, and obesity have been considered singly, and in combination, and are reflected in the sedentary/unskilled residual functional capacity . . . ." (R. at 30). Further, Plaintiff only has two severe impairments—degenerative disc disease and obesity—and does not assert that he has any other non-severe impairments that should be addressed in combination. The ALJ's decision extensively focuses upon the effects of his degenerative disc disease, including Plaintiff's own claims and the medical source opinions. While portions of the opinion discuss certain evidence separately, the opinion as a whole considers all appropriate evidence of the effects of Plaintiff's impairments cumulatively.

The ALJ's decision also expressly "notes that the claimant has a body mass index of 35.9 and in addition to [a] back disorder, obesity has been diagnosed." (R. at 30). The ALJ found that, as Social Security Ruling 02-1p provides, in pertinent part, that "obesity can cause limitations of function in an individual's ability to sit, stand, walk, lift, carry, or push/pill, and may affect the ability to climb, balance, stoop, and crouch," that the "combined effects of obesity with the other

14

impairment may be greater than what might be expected without obesity." (R. at 30). Accordingly, the Court concludes that the ALJ properly considered the combined effects of Plaintiff's impairments and that his decision was supported by substantial evidence.

Therefore, upon a finding that the ALJ's decision was supported by substantial evidence and applied the correct legal standards, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED** this 8th day of April, 2016.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE